**Bonnie J. HUTCHINSON,**
**Plaintiff–Appellant,**

v.

**Stephen GROSKIN, M.D.,**
**Defendant–Appellee.**

**No. 644, Docket 90–7619.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 29, 1990.

Decided March 11, 1991.

John P. Maley, Burlington, Vt. (Sylvester & Maley, Inc., Burlington, Vermont, Michael S. Brow, of counsel), for plaintiff-appellant.

Ritchie E. Berger, Burlington, Vt. (Dinse, Erdmann & Clapp, Burlington, Vermont, Pietro J. Lynn, of counsel), for defendant-appellee.

Before OAKES, Chief Judge, and LUMBARD and CARDAMONE, Circuit Judges.

LUMBARD, Circuit Judge:

Plaintiff Bonnie J. Hutchinson appeals from the June 12, 1990 judgment of the District of Vermont, Albert W. Coffrin, *Judge*, entered in favor of defendant Stephen Groskin, M.D., after a five-day trial. The jury found defendant not liable for negligence. Plaintiff contends that the district court erred in permitting defense counsel to use three letters in its examination of expert witnesses. We agree, and reverse.

On April 2, 1985, plaintiff visited defendant, her primary care physician, in Stowe, Vermont, to inquire about a mole on her abdomen that was undergoing changes. Defendant examined the mole, and instructed plaintiff to watch the mole and to return to his office if the mole increased in size.

In November, plaintiff visited defendant again and told him that the mole had increased in size, and that when she nicked her thumbnail on it, it would bleed. Defendant reexamined the mole and did a punch biopsy of it to obtain a specimen for patho-logic analysis. He then cauterized the mole.

Defendant sent the tissue specimen to a pathologist. Two weeks later, plaintiff called defendant to learn the results. Defendant, who had had a telephone conversation with the pathologist but had not received the written pathology report, told plaintiff that "there was a ninety-five percent chance that things looked okay." Shortly thereafter, defendant received the pathology report, which indicated that plaintiff had superficial spreading melanoma. Defendant did not inform plaintiff about the written report.

In January 1986, plaintiff sought a second opinion from Dr. Roger Foster of Burlington, Vermont. Dr. Foster examined her, reviewed the pathology report and informed her for the first time that she had cancer. Within four days, Dr. Foster did a wide excision of the area where the mole had been.

In September 1987, Dr. Foster determined that plaintiff's cancer had spread to one of her right inguinal (groin) lymph nodes. Plaintiff underwent surgery for removal of all nodes in the region. She was hospitalized for a week. For one month following surgery, plaintiff had a device inserted in her leg to drain excess lymphatic fluids. Since its removal, she has worn a heavy elastic full-length, support stocking and has had continual pain and swelling in her right leg and foot.

In March 1988, plaintiff, a citizen of New York, brought this negligence action in the District of Vermont, basing jurisdiction on diversity of citizenship. 28 U.S.C. § 1332(a)(1). She alleges that defendant was negligent in not performing a biopsy at her first visit, in April, and later in failing to inform her that she had malignant melanoma. Additionally, she contends that defendant should have disclosed diagnostic and treatment alternatives and advised her of the risks involved with recently-developed and changing moles. Plaintiff claims that when the biopsy indicated that she had cancer, defendant should have made a wide excision of the area. According to plaintiff, defendant's

negligence resulted in the cancer's spread to her lymph node and an increased risk of recurrence and death.

On appeal, plaintiff argues that several related evidentiary errors warrant reversal and a new trial, namely, that the district court erred in permitting defendant to use three letters in the redirect examination of defense expert David Bronson.

During Dr. Bronson's redirect examination, the following exchange occurred:

Q. [DEFENSE COUNSEL]: Showing you Defendant's A for identification, B for identification, and C for identification, would you identify each of those documents by date and author for the jury, please, Dr. Bronson?

A. This is a letter dated June 5th from Roswell Park Memorial Institute from Dr. Karkousis [sic], who's the associate chief of surgical oncology and chief of the Soft Tissue Melanoma and Bone Service at Roswell Park. It's a letter to you.

Q. Does he offer an opinion there as to Mrs. Barton's [1] prognosis?

A. Yes, he does.

[PLAINTIFF'S COUNSEL]: Excuse me. Note my objection, hearsay.

THE COURT: Well, he hasn't testified as to what the opinion is.

[PLAINTIFF'S COUNSEL]: He's starting to read from the report, I think, your Honor. That's why I'm objecting at this point.

THE COURT: Well, is that what you have in mind?

[DEFENSE COUNSEL]: It isn't, your Honor.

Q. Would you identify Defendant's B for identification, Dr. Bronson?

A. Yes, this is a letter dated May 25th, 1990, to you, regarding Bonnie Hutchinson, whom Dr. Patterson had seen, from Dr. Bradford Patterson, director of cancer control, Dana Farber Cancer Institute.[2]

Q. What does that mean to be director of cancer control from Dana Farber Institute?

A. I expect he leads a very broad program of managing cancer patients at that center.

Q. Are you personally familiar with Dr. Patterson?

A. Yes. He came and—his reputation is quite good. He came and actually spoke at our institution a year ago. Was an invited speaker.

Q. What is his medical specialty, Doctor?

A. He's a surgical oncologist.

Q. And Defendant's C for identification? What is the date of that and who's it authored by?

A. This is a letter dated August 8th, 19__ I'm sorry, August 11th, 1989, by Dr. Darrell S. Rigel, clinical assistant professor at New York University Medical Center.

Q. Is that the same Dr. Rigel that [plaintiff's counsel] was having you read from? [3]

A. Yes, yes.

Q. In that letter does Dr. Rigel offer an opinion as to Mrs. Barton's prognosis?

A. Yes, he does.

[PLAINTIFF'S COUNSEL]: Excuse me. Note my continuing objection, your Honor.

THE COURT: All right.

1. Plaintiff married since bringing this action.

2. On direct examination, Dr. Bronson testified that this letter was one of the items he had reviewed that related to plaintiff's prognosis. He also testified that Dr. Patterson was "a respected surgical oncologist affiliated with the Dana Farber Cancer Institute in Boston and Harvard Medical School and he's director of cancer control at that institution." In addition, plaintiff testified that she had consulted with Dr. Patterson when she considered entering an experimental treatment program.

3. On direct examination, Dr. Bronson testified that he had reviewed some literature by Dr. Rigel, which he characterized as reports of leading authorities on melanoma. Dr. Bronson testified that "Dr. Rigel is an academic dermatologist who's affiliated with New York University and worked extensively with the Cooperative Melanoma Group." On cross-examination, plaintiff's counsel asked Dr. Bronson if he agreed with a statement made in one of Dr. Rigel's articles.

Q. With respect to your opinion as to Mrs. Barton's prognosis today, Dr. Bronson, what is it?

A. My opinion is that she has a ninety percent chance of never seeing melanoma again.

Q. Is your opinion based in any way on those documents we have just discussed?

A. It's based upon my clinical experience, looking at the literature, looking at not only the textbook that talks about day one, but the fact that she's two years since her resection and has no other evidence of recurrence. That puts her in a much better prognostic category. The longer—the longer period of time you have without it returning, the better off you are.

Q. Is your testimony as to Mrs. Barton's prognosis consistent with that of Doctors Patterson, Rigel and Karakousis?

A. Yes, very much so.

■ Such use of the letters was error, to which plaintiff properly objected. By asking Dr. Bronson to identify the documents, offer his own opinion regarding plaintiff's prognosis, and then state whether his opinion was consistent with those expressed in the documents, defense counsel used Dr. Bronson as a conduit for hearsay testimony. Defense counsel thereby introduced the purported opinions of Doctors Patterson, Rigel, and Karakousis, who were not disclosed as experts during discovery and whom plaintiff had no opportunity to examine. Moreover, in closing argument, counsel reminded the jury several times that Dr. Bronson's opinion was consistent with these other physicians'. Thus defense counsel's tactic simultaneously conveyed hearsay testimony to the jury and improperly bolstered Dr. Bronson's credibility.

We find similar error in the redirect examination of defense expert Johannes C. Nunnink. The following exchange took place between defense counsel and the witness:

Q. Now, today I showed you Defendant's A for identification. That's the letter of Dr. Karakousis, dated June 5, 1990?

A. Yes.

Q. And does he in that letter offer an opinion as to Mrs. Barton's prognosis?

A. Yes, he does.

Q. Is your opinion consistent with Dr. Karakousis's opinion?

A. Yes, it is.

[PLAINTIFF'S COUNSEL]: I'm going to object, your honor.

THE COURT: Well, he's already testified that it was.

[PLAINTIFF'S COUNSEL]: I understand. And he knows this is improper. It's piggybacking of expert opinions. It's a hearsay letter.

THE COURT: Well, we'll let the answer stand. The doctor's already testified to it.

■ On appeal, defendant argues that error cannot be predicated upon this ruling because the objection was not timely. Fed. R.Evid. 103(a)(1). We disagree. To be timely, an objection or motion to strike must be "made as soon as the ground of it is known, or reasonably should have been known to the objector." *See United States v. Check*, 582 F.2d 668, 676 (2d Cir.1978) (quoting 21 C. Wright and K. Graham, Federal Practice and Procedure § 5037, at 188 (1977)). Although an objection should be made after the question has been asked but before an answer has been given, this rule is not inflexible.

■ Here, plaintiff's counsel objected just after Dr. Nunnink responded to the question. The court was well aware of the basis for the objection, as it had previously been made and overruled during Dr. Bronson's testimony. Even if plaintiff's counsel had not objected, the court should have barred the use of such evidence, as it was plain error. Fed.R.Evid. 103(d).

The court's rulings regarding the use of the letters permitted defense counsel to convey to the jury the purported opinions of three physicians who were not disclosed as experts during discovery, pursuant to Fed.R.Civ.P. 26(b)(4). Moreover, it is not clear that the documents were what they purported to be. If the documents were authentic, this evidence was hearsay; plain-

tiff could not cross-examine the physicians to challenge their qualifications and the bases of their opinions. Two of the three letter writers had never seen the plaintiff and must have based their opinions on records and information supplied by defense counsel. Further, neither witness testified that he relied on these specific documents in the formulation of his own opinion. *Cf., O'Gee v. Dobbs Houses, Inc.,* 570 F.2d 1084 (2d Cir.1978) (permitting expert witness to testify regarding reports of treating physicians on which he relied in formulating his opinion). To the contrary, they used the documents in an attempt to prove that other experts agreed with their opinions on the issue of plaintiff's prognosis.

The court had insufficient evidence from which to judge whether the jury should consider such opinions, which essentially were offered by defense counsel as expert testimony. Thus the court could not make and did not make the required ruling on the propriety of receiving such evidence. *See Hartke v. McKelway,* 526 F.Supp. 97, 101 (D.D.C.1981) (trial court must weigh the qualifications of the witness and determine whether she is qualified to express an opinion on the subject), *aff'd,* 707 F.2d 1544 (D.C.), *cert. denied,* 464 U.S. 983, 104 S.Ct. 425, 78 L.Ed.2d 360 (1983); *cf.,* Fed.R.Evid. 702 (providing that expert witness must be qualified by knowledge, skill, experience, training, or education).

Despite these infirmities, the three letters were treated as evidence on the issue of prognosis and enhanced the credibility of Drs. Bronson and Nunnink. The nature of these letters could not be developed by plaintiff's counsel without running the risk of emphasizing the inadmissible opinions of the three physicians.

The court's rulings in these two instances deprived the plaintiff of a fair trial; it affected a substantial right of the plaintiff and warrants reversal and a new trial. Fed.R.Evid. 103(a).

Reversed and remanded for a new trial.