**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Christopher S. KEMP, Defendant–Appellant.**

**No. 93CA0430.**

Colorado Court of Appeals,
Div. III.

April 7, 1994.

Rehearing Denied May 5, 1994.

Certiorari Denied Dec. 19, 1994.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Wendy J. Ritz, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Law Firm of William Muhr & Associates, Edward L. Arcuri, III, Colorado Springs, for defendant-appellant.

Opinion by Judge TAUBMAN.

Defendant, Christopher S. Kemp, appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of aggravated robbery, one count of conspiracy to commit aggravated robbery, and three habitual criminal counts. Defendant also appeals the life sentence imposed under the habitual criminal statute. We affirm.

The testimony at trial revealed the following. On May 13, 1990, a World Savings Bank branch in Colorado Springs was robbed and $580 was taken. The robber approached a teller window and ordered the teller to give him all of her twenties, fifties, and hundreds. The robber warned the teller not to activate the alarm and that he was armed. The robber took the money and left.

The branch manager observed the conversation between the robber and the teller. She felt that something was wrong. As the robber started to leave, the manager attempted to interrupt to see if she could be of any assistance. The teller told the manager to leave the robber alone because he said he was armed. As the robber left, the teller hit the activator button for the security camera. Pictures were taken, but destroyed before the trial.

The teller and the manager described the robber as a tall, thin, dark-complected man with a blue bandana around his head, a blue windbreaker, jeans, and tennis shoes. Both witnesses identified Kemp as the robber in a photographic line-up shown to them six months after the robbery. At trial, the witnesses also identified Kemp as the robber.

Another witness, who loaned his Ford Bronco to his son for the day, told the police that he saw his car in the parking lot when he was leaving a local cafeteria. He noticed that there were three men in his car, none of whom was his son. The witness reported the car stolen and described the driver as a thin man with long dark hair, mustache, and sunglasses. The car was later found in good condition.

The police investigation revealed that this Bronco had been used by the robber to flee the scene. The witness' son later told the Colorado Springs Police that he had loaned the Bronco to Kemp on May 13, 1990, the date of the robbery. The witness' son identified Kemp as the robber, based on statements made by Kemp to him.

Another witness acknowledged that, on the day of the robbery, Kemp had signed out of the community corrections facility in which he was incarcerated to look for a job. Kemp returned to the community corrections facility later that day and turned in the first page of his job hunting form. He never turned in the second page of the form, on which he was supposed to list the contacts he had made that day.

Defendant was convicted at trial and was sentenced to life imprisonment.

### I. Court Appointment of Identification Expert Witness

Defendant first contends that the trial court erred when it denied his request for an appointed expert who would testify regarding the fallibility of eyewitness identifications. We disagree.

■ Expert testimony on the reliability of eyewitness identification is admissible in some cases based on an analysis of the proposed testimony under CRE 702 and 403.

The trial court has broad discretion to evaluate on a case-by-case basis whether expert testimony on this issue would assist the trier of fact to understand evidence or to determine facts in issue. We will not reverse the trial court's ruling to admit or exclude such expert testimony unless the ruling is manifestly erroneous. *Campbell v. People,* 814 P.2d 1 (Colo.1991).

■ Here, the trial court correctly analyzed defendant's offer of proof regarding expert testimony under the standards set forth in *Campbell v. People, supra.* It specifically found that the expert testimony regarding impairment of memory under stressful conditions was:

> less probative considering the fact that there [were] two independent bank teller identifications ..., along with one to two co-defendant identifications and additional corroborating evidence ... In view of all the circumstances in this case, the court doubts the admissibility of the ... expert testimony even though there would be some small helpfulness to the jury.... That helpfulness is clearly outweighed by confusion of the issues, the possibility of misleading the jury, considerations of undue delay and waste of time and resources.

The trial court properly analyzed defendant's request for an expert on the reliability of eyewitness identification under CRE 702 (assistance to the trier of fact) and CRE 403 (probative value outweighed by unfair prejudice, confusion of the issues, etc.). Thus, we conclude that the denial of defendant's request for a court-appointed expert on the reliability of eyewitness identification was proper under *Campbell v. People, supra,* and was not manifestly erroneous.

## II. Improper Identifications of Defendant

Defendant next argues that the pretrial identifications should have been suppressed because they were the product of unduly suggestive line-ups. We disagree.

■ An out-of-court identification procedure is impermissibly suggestive when there is a substantial likelihood of an irreparable misidentification based on the totality of the circumstances. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1976); *People v. Borrego,* 668 P.2d 21 (Colo.App. 1983).

■ The threshold question in the above test is whether the identification procedures were unnecessarily suggestive. A line-up is proper if the photos are matched by race, approximate age, hair type, and a number of other characteristics. *People v. Borrego, supra.* If the court determines that the procedures were not unnecessarily suggestive, the identification is admissible without further inquiry. *People v. Martinez,* 734 P.2d 126 (Colo.App.1986).

■ After hearing extensive testimony from defendant and the detective who prepared the line-up, the trial court concluded that there was nothing improper about the photographic line-up. Because we agree with the trial court's determination that the procedures were proper and its conclusion is supported by the record, the out-of-court, line-up identifications were admissible and the trial court was not required to examine the other factors suggested by defendant.

## III. Testimony of Prior Incidents

Defendant further argues that the trial court improperly permitted identification testimony from witnesses involved in other, similar bank robberies. Again, we disagree.

■ A trial court may admit other crime evidence if it finds, based on review of all of the evidence before it and by a preponderance of that evidence, that the other crime occurred and that defendant committed the other crime; that the other crime evidence is being offered for a proper purpose and is logically relevant to a material issue in the case, independent of inferring the defendant's bad character; that its probative value outweighs any unfair prejudice; and that distinct similar features between the crimes exist. *See People v. Garner,* 806 P.2d 366 (Colo.1991); *People v. Spoto,* 795 P.2d 1314 (Colo.1990).

■ Here, defendant confessed and pled guilty to the three prior bank robberies committed in a manner similar to the robbery here about which the People proposed to

offer witnesses. The trial court then weighed the other factors, including the similarities between the crimes, and admitted the similar crime testimony for the limited purpose of identity. The trial court also instructed the jury before and after the testimony of each witness and in the general charge to the jury that the testimony was to be considered only for the purpose of identity. *See People v. Garner, supra.*

The trial court properly applied the factors set forth in *People v. Garner, supra,* and *People v. Spoto, supra,* and its findings are supported by the record. Thus, we conclude that the trial court did not abuse its discretion when it admitted the similar crime evidence.

### IV. Admissibility of Hearsay Statements of Co–Defendant

■ Defendant further contends that the trial court improperly admitted hearsay testimony of a co-defendant implicating defendant in the World Savings robbery. We disagree.

CRE 804(b)(3) provides that out-of-court statements against the declarant's interest, offered to prove the truth of the matter asserted, are not excluded by the hearsay rule if the declarant is unavailable. The supreme court has adopted a modified test when the witness is a co-defendant. If a co-defendant witness is unavailable and there are sufficient indicia of reliability such as independent evidence to overcome the presumption of unreliability, the evidence is admissible. *People v. Dement,* 661 P.2d 675 (Colo.1983); *see People v. Drake,* 785 P.2d 1253 (Colo.1989).

Here, the trial court admitted hearsay testimony from a detective regarding statements made by a co-defendant after it had evaluated the appropriate factors and the hearsay exception. Specifically, the trial court found that the co-defendant witness was unavailable because he refused to testify even under the threat of contempt. The trial court also found sufficient indicia of reliability. Specifically, the trial court stated: "there is clearly independent testimony in the record at the suppression hearing, at the plea hearing for [the witness], ... [and] the testimony presented in this trial that sup-

ports and recognizes the reliability of [the witness'] statement to [the detective]." The trial court listed the evidence it considered supportive of the proffered hearsay testimony and allowed another detective to testify for defendant regarding inconsistencies in the co-defendant witness' prior statements. Accordingly, the trial court properly considered the relevant factors under applicable case law and properly concluded that the testimony was trustworthy.

### V. Sentencing Under Habitual Criminal Statute

■ Defendant argues that he was improperly sentenced under the habitual criminal statute. First, he contends that the habitual criminal charges were not included in the original information and thus, could not be added by an amendment. Second, relying on § 18–1–410(1)(f)(I), C.R.S. (1986 Repl.Vol. 8B), defendant contends that the trial court should have applied the recent amendments to the habitual criminal statute that changed a mandatory life sentence to a sentence of four times the maximum presumptive range. Thus, defendant maintains he should have been sentenced to 64 years in prison, four times the maximum 16–year presumptive range sentence for aggravated robbery. *See* Sections 18–4–302(3), C.R.S. (1986 Repl.Vol. 8B) (class 3 felony) and 18–1–105(1)(A)(1), C.R.S. (1993 Cum.Supp.) (16–year maximum presumptive range for a class 3 felony). We disagree with both contentions.

Pursuant to Crim.P. 7(e), an information can be amended as to form or substance at any time prior to trial at the discretion of the trial court. Thus, it is irrelevant that the initial information did not contain charges under the habitual criminal statute.

■ Defendant argues that § 18–1–410(1)(f)(I) requires that we apply the amendment to the habitual criminal statute retroactively in the interest of justice. However, we conclude that the legislative intent to apply the amendment prospectively is facially clear.

The habitual criminal statute, in effect when defendant was sentenced, § 16–13–

101(2), C.R.S. (1986 Repl.Vol. 8A), states in relevant part that:

> Every person convicted in this state of any felony, who has been three times previously convicted, upon charges separately brought and tried, and arising out of separate and distinct criminal episodes, either in this state or elsewhere, of a felony, or ... of a crime which, if committed within this state, would be a felony, shall be adjudged an habitual criminal and shall be punished by imprisonment in a correctional facility for the term of his or her natural life.

In 1993, the General Assembly amended the sentencing portion of § 16–13–101(2) to read: "and shall be punished for the felony offense to which such person is convicted ... for a term of four times the maximum of the presumptive range ... for the class of felony of which such person is convicted." *See* § 16–13–101(2), C.R.S. (1993 Cum.Supp.). The General Assembly expressly provided that this amendment would apply to offenses committed on or after July 1, 1993. Colo.Sess. Laws 1993, ch. 322, § 28 at 1975–6.

██ Whether a defendant is entitled to be resentenced under ameliorative amendments depends on the intent of the General Assembly as expressed in the statutory language. Amendments should be construed in a manner consistent with the effective date clause, while avoiding anomalous results. *See People v. McCoy,* 764 P.2d 1171 (Colo. 1988); *People v. Gallegos,* 789 P.2d 461 (Colo. App.1989).

Here, the General Assembly explicitly stated that the amendment to the habitual criminal statute only applies to offenses committed on or after July 1, 1993. Because defendant was convicted of an offense committed in 1991, the amendatory language does not apply to him. We do not address the effect of the amendment on defendant's proportionality review because that issue was not raised.

### VI. Trial Court's Consideration of Acquittal

██ Defendant also contends that during a proportionality review of his sentence the trial court improperly considered a crime of which he was acquitted. We agree with the defendant but conclude that this error was harmless.

Crim.P. 52(a) provides that "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

Here, during the proportionality review of the life sentence to be imposed under the habitual criminal statute, the trial court mentioned another crime that defendant had been acquitted of and stated that it did not believe the acquittal was justified.

Although this comment was improper, the trial court expressly stated that the incident that was the basis for the acquittal weighed very little in its proportionality review. Additionally, defendant had been convicted of more than three prior felonies and was subject to a life sentence under the habitual criminal statute regardless of the trial court's mention of the additional crime.

Judgment affirmed.

CRISWELL and DAVIDSON, JJ., concur.