The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Henry L. GRIFFIN, Jr., Defendant–Appellant.

No. 96CA2139.

Colorado Court of Appeals,
Div. V.

Dec. 24, 1998.

Rehearing Denied Feb. 18, 1999.

Certiorari Denied Sept. 20, 1999.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Lauren A. Edelstein, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Ann M. Roan, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BRIGGS.

Defendant, Henry L. Griffin, Jr., appeals the judgment of conviction entered on jury verdicts finding him guilty of second degree kidnapping, first degree sexual assault, second degree assault, and second degree sexual assault. We affirm.

A man dragged a woman into a van and sexually assaulted her. The victim identified defendant in a photo line-up and at trial. Defendant's step-grandfather testified that at the time of the assault defendant owned a van matching the description given by the victim. An expert in physical evidence testified that semen taken from the victim's vagina contained genetic markers found in defendant's blood; that samples of pubic hair taken from the victim were consistent with defendant's type of hair; and that four hairs found imbedded in the back of defendant's van were consistent with the victim's type of hair.

## I.

Defendant contends the trial court erred by admitting inadmissible hearsay evidence when it allowed the prosecution's expert witnesses to bolster her testimony by stating her work had been subject to peer review. This, the defendant claims, violated his constitutional right to confront witnesses against him. We agree the evidence was not admissible but conclude the error was harmless.

### A.

The prosecutor presented the testimony of an employee of the Colorado Bureau of Investigation (CBI). The trial court accepted the employee as an expert in serology and in hair and fiber analysis. Among other things, the expert testified that in her opinion, based on her comparison of numerous morphological characteristics, various pairs of hair samples were similar.

When the witness began describing the steps taken in making the comparisons, defense counsel objected. In a side-bar conference, counsel argued that the witness should

not be permitted to testify that another examiner, not called as a witness at trial, had reached the same conclusions. The argument was that the testimony would be hearsay and would violate defendant's constitutional right of confrontation.

In response, the prosecutor acknowledged that the witness did not rely on the other expert in forming her opinions and, thus, did not argue the evidence was admissible under CRE 703. The prosecutor nevertheless argued the evidence was not hearsay and was admissible to show standard protocol.

The trial court concluded that the witness could describe the standard procedures for double-checking accuracy and whether that protocol was followed, but could not testify as to the opinion given by the other expert.

The following questioning then occurred:

Q: Agent, without indicating statements or conclusions of anyone, is it CBI that your work is checked? [sic]

A: It is critical we are subjected to peer review, yes.

Q: And was that done in this case?

A: Yes, it was; it's done in all cases.

### B.

Defendant contends the testimony implies that the opinions of the peer, who did not testify, were the same as those of the testifying expert. He argues that the evidence was inadmissible hearsay because it was offered to prove the truth of the assertion that the various hair samples were similar. He further argues that the evidence was not admissible under CRE 703 because the peer did not provide facts or data upon which the testifying expert relied in forming the opinions she gave at trial.

The People in response acknowledge that the testifying expert did not rely upon the conclusions of the peer as a basis for the opinions she gave at trial, so as to bring the testimony within the scope of CRE 703. The People nevertheless assert that the testimony did not include any hearsay because the witness did not actually testify to any assertions made to her by the peer. Any inference that the jury might have drawn from the testimony was incidental. Further, even if the testimony did include an implied assertion that the peer's conclusions were the same, the intent was not to improperly bolster the credibility of the testifying expert, but merely to explain routine practices and procedures.

We conclude that the evidence was inadmissible hearsay. However, we note at the outset that neither party raised the issue before the trial commenced or presented any authority in support of their arguments at trial. This left the trial court to resolve, in the midst of trial, a conceptually complex issue. *See generally* 2 *McCormick on Evidence* §§ 246 & 250 (J. Strong 4th ed.1992); R. Bacigal, *Implied Hearsay: Defusing the Battle Line Between Pragmatism and Theory,* 11· S. Ill. Univ. L.Rev. 1127 (1987).

### 1.

CRE 801(c) defines hearsay as "a statement other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." Under CRE 801(a): "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him to be communicative." The rule is identical to its federal counterpart.

The rule addresses the classic dilemma of the implied assertion. That dilemma is how to treat a statement or conduct by a person out of court, not subject to cross-examination at trial, described by a witness at trial, from which a fact finder could infer a separate fact.

On the one hand, the statement or conduct described by the testifying witness can be treated as containing hearsay. This is because, even though a separate assertion is only implied, it remains an assertion made out of court by a witness not subject to cross-examination. On the other hand, the statement or conduct can be treated as containing no hearsay. This is because the fact to be proved was not literally asserted, but only inferred from separately described statement or conduct. CRE 801(a), like its federal counterpart, resolves the dilemma by focusing solely on whether the assertion or con-

duct by the out-of-court witness was intended to imply to the testifying witness a separate fact in question at trial. *See generally* 2 *McCormick on Evidence, supra;* R. Bacigal, *supra.*

At first blush, the issue before us appears to present a typical example of an implied assertion by a witness not subject to cross-examination, the testifying expert's peer. However, while not discussed by the parties, upon closer examination the issue presented here in fact involves, not an implied assertion by the peer, but an implied assertion by the testifying expert. In context, the assertion is that the peer expressly informed the testifying expert that the peer had conducted appropriate examinations and reached the same conclusions as the testifying expert.

The statements made by the out-of-court witness, the peer, were oral or written assertions, obviously intended to be communicative. Although these statements were implied by the testifying witness, they were nevertheless offered in evidence to help prove the truth of the matters asserted. Under any approach, the peer's assertions were "statements" that fell within traditional notions of hearsay. *See* CRE 801(a) & 801(c); *Hutchinson v. Groskin,* 927 F.2d 722 (2d Cir.1991)(improper to use testifying expert as a conduit for hearsay statements of another expert that bolster the testifying expert's opinion).

We reject the People's argument that we should conclude to the contrary because the testifying expert was merely describing standard protocol, and she did not *intend* to imply any assertion made to her by her peer. The argument ignores that the testifying expert did not merely state, for example, that it was standard protocol to double-check work, thus describing standard protocol without creating an inference that another person had formed the same opinions. Instead, the expert expressly referred to *peer review* of her conclusions.

Furthermore, the argument focuses on the communicative intent of the wrong person. Under CRE 801(a), whether an implied assertion is a "statement" is determined by focusing, not on the communicative intent of the person testifying, but on that of the person out of the courtroom who is not subject to cross-examination at trial.

Whatever may have been the communicative intent of the testifying expert, the implication of her testimony was that the person not subject to cross-examination, her peer, intended to communicate to her assertions made out of court. They were offered in evidence to help prove the truth of the matters asserted. Thus, the peer's statements, even though implied, were inadmissible hearsay. *See* CRE 801(a) & 801(c).

### 2.

We further agree that the hearsay was not admissible under CRE 703. That rule permits an expert to testify to facts and data that need not be admissible in evidence if they formed the basis of the expert's opinion and are of the type reasonably relied upon by experts in the field.

The use of facts and data to which CRE 703 applies is distinct from the use here. As acknowledged by the People, the testifying expert did not use the peer's conclusions as a *basis* for her findings and opinions. The conclusions merely *bolstered* her findings and opinions. *See Hutchinson v. Groskin, supra; C.S.I. Chemical Sales, Inc. v. Mapco Gas Products, Inc.,* 557 N.W.2d 528 (Iowa App.1996)("important distinction" between the introduction of information or an opinion of a nontestifying expert as a basis for a testifying expert's opinion and the use of that information to corroborate the testifying expert's opinion); *but see Sherman v. Marden,* 525 N.W.2d 550 (Minn.App.1994).

In sum, the inference from the expert's testimony at trial concerning communications from another expert fell within the traditional definition of hearsay. The evidence was not admissible under any exception that would make the hearsay admissible. Further, its introduction violated defendant's right of confrontation.

### C.

█ The People argue that, even if the testimony permitted the introduction of inadmissible hearsay, its introduction was harm-

less. In the circumstances presented here, we agree.

■ Errors in the admission of evidence, even of constitutional dimension, do not require reversal of a criminal conviction if the error is harmless beyond a reasonable doubt. To determine whether such an error is harmless, an appellate court must examine the facts of the case to determine whether the error affected the outcome of the case. *Topping v. People,* 793 P.2d 1168 (Colo.1990). For example, if the evidence was merely cumulative and did not substantially influence the verdict or affect the fairness of the trial proceedings, its admission was harmless. *See People v. Fuller,* 788 P.2d 741 (Colo.1990).

Here, the expert witness testified to scientific analysis of hair and body fluid samples. The defendant had ample opportunity to cross-examine this witness and was able to elicit from the witness detailed information about the statistical probabilities to which she testified.

In closing argument, defense counsel argued that, as to the hairs, the findings were merely consistent with defendant having committed the crimes, but did not rule out that others may have committed the crimes. As to the blood typing, counsel argued only that the expert had obtained her percentages from a treatise and did not know how the authors of the treatise had obtained their results.

However, no argument was made that the data relied on by the expert was other than of a kind upon which experts in the field based their opinions. No apparent errors in the expert's findings and conclusions were disclosed or argued, and defendant did not present another expert to refute any of the findings and opinions of the testifying expert.

Finally, although not referenced in the briefs on appeal, we separately note that during cross-examination of the testifying expert, defense counsel asked whether she could actually go through all the hair characteristics she considered and explain to the jury what was similar. In the course of her response, the expert stated:

What I'm trying to get across is the hair is mounted in permanent mounting media and the opinion is rendered the hairs were of similar morphological characteristics. This hair was then subjected to peer review. It was also another opinion of these hairs being similar ... formed by another experienced examiner in the laboratory....

This testimony was clearly outside the scope of the evidence the trial court had ruled would be admissible. However, defense counsel did not, for example, request a mistrial, or even object to the statements as nonresponsive and beyond the scope of the trial court's ruling.

In these circumstances, because the inferred hearsay statements by the other expert were merely cumulative of other evidence admitted without substantial disagreement, or without objection, and because ample other evidence was introduced to establish defendant's guilt, we conclude that the error in admitting the inferred hearsay statements was harmless. *See People v. Fuller, supra; People v. Oldsen,* 697 P.2d 787 (Colo.App.1984); *cf. Todd v. Williams,* 242 Va. 178, 409 S.E.2d 450 (1991)(error not harmless where the jury was presented with a classic battle of the experts on critical issue).

## II.

Defendant next contends the trial court erred in refusing to suppress evidence of the victim's photo identification of him and, as a result, in permitting the victim to identify him at trial. We are not persuaded.

■ Convictions based on a pretrial photo identification will be set aside only if the identification procedures were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *People v. Jones,* 191 Colo. 385, 553 P.2d 770 (1976); *People v. Kemp,* 885 P.2d 260 (Colo.App.1994). If the line-up is not itself unduly suggestive, and if the procedures used are not otherwise unduly suggestive, the identification is admissible. *See People v. Kemp, supra.*

■ The state is not required to provide exact replicas of the defendant for a line-up. A photo line-up is proper if the photos are matched by common characteristics such as race, approximate age, and other physical features. *See People v. Bolton,* 859 P.2d 311 (Colo.App.1993).

■ Here, during the month after the assault, the police showed the victim a series of three photo line-ups. She did not identify her assailant in the first two, neither of which included a photo of defendant. When shown the third line-up, the victim identified defendant's photo.

Our review of the third photo array shows that it is composed of individuals who are of the same race, approximate age, and hair type. Contrary to defendant's assertion, the dress of the pictured individuals is unremarkable, and they are shown only above the shoulders. Additionally, although the suspects have varying degrees of facial hair, the degree of variation is not so great as to make any one individual, and particularly the defendant, stand out among the others. The police further followed correct procedures to avoid any undue suggestiveness in conducting the line-ups.

Accordingly, we find no error in the trial court refusing to suppress evidence of the photo line-up. As a result, we likewise find no error in permitting the victim to identify defendant at trial. *See People v. Monroe,* 925 P.2d 767 (Colo.1996); *People v. Suttles,* 685 P.2d 183 (Colo.1984).

### III.

Defendant asserts the trial court erred when it refused to grant two challenges for cause during jury selection. We again are not persuaded.

In response to a jury questionnaire during voir dire, two potential jurors indicated they might have difficulty being unbiased in a sexual assault case. Defendant challenged both for cause.

The trial court questioned the jurors *in camera.* Both expressed concern but indicated they would try to be fair and base a decision on the evidence and the instructions. The court determined they could be fair and denied the challenges for cause. Defendant later exercised peremptory challenges on both jurors.

■■ A defendant in a criminal proceeding has a fundamental right to a trial by fair and impartial jurors. *People v. Abbott,* 690 P.2d 1263 (Colo.1984). Thus, a trial court must grant a challenge for cause to a juror who is unwilling or unable to render a fair and impartial verdict upon the evidence admitted at trial and pursuant to the instructions of law given by the trial court. *People v. Russo,* 713 P.2d 356 (Colo.1986); §16–10–103(1)(j), C.R.S.1998; Crim. P. 24(b)(1)(X).

■ However, a prospective juror's indication of concern about the ability to set aside a prejudice or preconceived belief about some facet of the case does not automatically warrant exclusion for cause. Disqualification is not required if the trial court is reasonably satisfied that the prospective juror is willing and able to be fair and to follow its instructions. *See People v. Carrillo,* 946 P.2d 544 (Colo.App.1997); *People v. Ferrero,* 874 P.2d 468 (Colo.App.1993).

Trial courts are afforded broad discretion in determining challenges for cause of prospective jurors, and their decisions will be set aside only in the case of an abuse of that discretion. This standard recognizes that the trial judge is the only judicial officer able to perform the critical assessments by personal observation of the credibility and demeanor of the prospective juror. *People v. Drake,* 748 P.2d 1237 (Colo.1988).

■ Here, one of the two jurors was a woman who was concerned with bias because her daughter had been sexually assaulted. She also stated that, as a woman, she might be affected by her feelings in this type of case. Nevertheless, she stated that she understood she was supposed to be impartial and that, although her emotions might be stirred, she would not base her decisions on her emotions.

■ The other juror indicated he had a friend who had been sexually assaulted several years earlier, and he was concerned whether he could be fair. His concern was

that things might come up at trial about which he would have some deep feelings. However, the juror was concerned in large part with what he did not know about the case, not what he knew. When asked if he felt he could follow the court's instructions and render a decision based on the evidence in the case, he responded that he would try his best and would be as fair as he could.

We are not persuaded that the trial court was required to grant defendant's challenge to either potential juror pursuant to *Nailor v. People*, 200 Colo. 30, 612 P.2d 79 (1980). Unlike the juror there, the jurors' doubts here were based upon incidents that had happened to others, not to the jurors themselves. Further, the incidents in question had occurred several years earlier, not the week before.

Based on the cold transcript of the jurors' responses, we may assume that the trial court had discretion to excuse either or both jurors for cause. Nevertheless, the trial court had the opportunity to observe the jurors as they were questioned and could judge their demeanor and credibility. Further, neither juror expressed an unyielding belief that defendant was guilty or an unwillingness to make a decision based upon the evidence presented and the instructions given.

In these circumstances, we cannot say that the trial court abused its broad discretion in refusing to excuse either juror for cause. *See People v. Carrillo, supra; People v. Ferrero, supra; see also People v. Abbott, supra; People v. Ward*, 673 P.2d 47 (Colo.App.1983).

## IV.

Defendant's final contention is that the trial court erred when it refused to grant a mistrial after a prosecution witness alluded to the fact that defendant was "in detention." We disagree.

■ A mistrial is a drastic remedy, warranted only when the prejudice to the accused is so substantial that its effect on the jury cannot be remedied by any other means. Because the trial court is in a better position to evaluate any adverse effect that improper testimony might have upon a jury, it has

discretion to determine whether a mistrial is warranted. Absent a gross abuse of that discretion and prejudice to the defendant, we will not disturb on review a trial court's decision to grant or deny a motion for a mistrial. *People v. Salcedo*, 985 P.2d 7 (Colo. App.1998).

■ The mere reference to an accused's incarceration is not necessarily so prejudicial as to require a new trial. The circumstances of each case must be reviewed to determine prejudice to the defendant. *People v. Lowe*, 184 Colo. 182, 519 P.2d 344 (1974); *see also People v. Lawson*, 37 Colo.App. 442, 551 P.2d 206 (1976).

■ Here, the prosecution asked a "criminalist" employed with the police department whether he had obtained medical assistance in drawing the defendant's blood for testing. The witness replied, "Yes, basically we responded to the infirmary at the detention facility where a [nurse and doctor] . . . assisted us . . . ." Defendant immediately moved for a mistrial.

The statement did not clearly indicate that defendant was incarcerated, and the jury was already aware that defendant had at some point been arrested for the crimes for which he was on trial. Further, as noted by the trial court, the district attorney did not intentionally solicit the reference to the detention center. Finally, the trial court admonished the witness not to refer to the defendant's incarceration again and offered to provide a curative instruction.

In these circumstances, the trial court did not abuse its discretion in refusing to grant a mistrial. *See People v. Lowe, supra; People v. Lawson, supra; see also State v. Murray*, 184 Ariz. 9, 906 P.2d 542 (1995)(testimony about blood being drawn from defendant while in jail did not require mistrial).

Judgment affirmed.

Judge MARQUEZ and Judge TAUBMAN concur.