24CA0971 Peo v Church 01-22-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0971
Mesa County District Court No. 15CR114
Honorable Gretchen B. Larson, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Larry D. Church,

Defendant-Appellant.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE YUN
Grove and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 22, 2026

Philip J. Weiser, Attorney General, Majid Yazdi, Senior Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Robert P. Borquez, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant

¶ 1    Defendant, Larry D. Church, appeals the postconviction court's order denying his Crim. P. 35(c) motion.  We affirm and remand the case for correction of the mittimus.

## I.    Background

¶ 2    Based on allegations involving nine victims (S.Y., S.R., J.D., J.N., J.M.N., K.K., C.C., A.D., and C.D.), a jury convicted Church of twenty counts: one count of sexual assault; one count of unlawful sexual contact; five counts of sexual assault on a child; two counts of sexual assault on a child — pattern of abuse; six counts of sexual assault on a child by one in a position of trust; two counts of sexual assault on a child by one in a position of trust — pattern of abuse; one count of incest; one count of aggravated incest; and one count of invasion of privacy for sexual gratification.

¶ 3    The trial court sentenced Church to a cumulative indeterminate term of ninety years to life in the custody of the Department of Corrections (DOC).

¶ 4    On direct appeal, a division of this court vacated one of the sexual assault on a child convictions and otherwise affirmed the judgment.  *People v. Church*, (Colo. App. No. 16CA2189, June 13, 2019) (not published pursuant to C.A.R. 35(e)).  The mandate

issued on March 31, 2020. Because this conviction was vacated, Church's cumulative DOC sentence was reduced on remand to eighty-four years to life.

¶ 5 In 2021, Church timely filed a pro se motion for a proportionality review of his sentence and requested the appointment of counsel. Almost two years later, postconviction counsel filed a supplemental Crim. P. 35(c) motion, asserting multiple ineffective assistance of trial counsel claims and again requesting a proportionality review of Church's sentence.

¶ 6 The postconviction court denied Church's motion without a hearing.

## II. Discussion

¶ 7 Church contends that the postconviction court erroneously denied his ineffective assistance of counsel claims alleging that counsel (1) failed to object to testimony that he was incarcerated; (2) failed to protect his right to a public trial; and (3) pressured him into a decision not to testify. Church has abandoned the remaining claims raised in his postconviction motion by not pursuing them on appeal. *See People v. Hunsaker*, 2020 COA 48, ¶ 10, *aff'd*, 2021 CO 83.

## A.  Standard of Review

¶ 8    We review de novo the denial of a Crim. P. 35(c) motion without a hearing. *People v. Cali*, 2020 CO 20, ¶ 14. "We may affirm the postconviction court's ruling on any ground supported by the record, whether or not the postconviction court relied on or considered that ground." *People v. Cooper*, 2023 COA 113, ¶ 7.

¶ 9    In a Crim. P. 35(c) proceeding, a judgment of conviction is presumed valid, and the defendant bears the burden of proving an entitlement to postconviction relief. *People v. Corson*, 2016 CO 33, ¶ 25. To obtain a hearing on a postconviction motion, the defendant must assert specific facts that, if true, would provide a basis for relief. *White v. Denver Dist. Ct.*, 766 P.2d 632, 635 (Colo. 1988).

¶ 10    A Crim. P. 35(c) motion may be denied without a hearing when "the motion and the files and record of the case show to the satisfaction of the court that the defendant is not entitled to relief." Crim. P. 35(c)(3)(IV). This standard is satisfied if (1) the allegations are bare and conclusory; (2) the allegations, even if true, do not warrant relief; or (3) the record directly refutes the defendant's claims. *People v. Duran*, 2025 COA 34, ¶ 15.

## B.    Ineffective Assistance of Counsel Law

¶ 11    A criminal defendant is constitutionally entitled to effective assistance of counsel. *Ardolino v. People*, 69 P.3d 73, 76 (Colo. 2003). To succeed on an ineffective assistance claim, the defendant must establish that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant, meaning that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Dunlap v. People*, 173 P.3d 1054, 1062-63 (Colo. 2007). A postconviction court may reject an ineffective assistance claim if the defendant failed to demonstrate either deficient performance or prejudice. *See People v. Aguilar*, 2012 COA 181, ¶ 9.

### C.    Failure to Object to Testimony that Church Was Incarcerated

¶ 12    In his motion, Church asserted that there were "multiple direct references by several witnesses" to his incarceration. He cited testimony from four witnesses on the sixth day of trial:[1]

---

[1] In his opening brief, Church attempts to bolster the allegations for this claim by presenting additional testimony mentioning his

4

1) A patrol sergeant testified regarding Church's arrest warrant, the circumstances surrounding his arrest, and his transport to and intake at the jail.

2) One of Church's stepdaughters testified that Church shaved his head "[o]nce he was incarcerated" and that she had told her daughter that "[g]randpa is gone right now and that he is sick."

3) One of Church's daughters testified that she learned about the allegations against him from her son who told her that her "dad had got arrested."

4) C.D. testified that she had informed her mother about the sexual contact when Church "was in prison."

¶ 13    Church argued that counsel performed deficiently by not objecting to this testimony and that the failure to object prejudiced him because it undermined his presumption of innocence.

---

incarceration and arguing that the postconviction court should have considered these instances as well. But we do not consider a defendant's attempts to use his appellate brief to "fortify . . . issues inadequately raised or supported" by the Crim. P. 35(c) motion. *People v. Rodriguez*, 914 P.2d 230, 251 (Colo. 1996).

¶ 14     The postconviction court denied this claim because Church focused exclusively on testimony that was largely "fleeting and relatively vague" (with the exception of the sergeant's testimony) and that occurred on a single day of the eight-day trial. The court also found the claim was conclusory and speculative because Church failed to sufficiently allege prejudice.

¶ 15     Comments about a defendant's custodial status are generally improper. *People v. James*, 40 P.3d 36, 41 (Colo. App. 2001), *overruled in part on other grounds by McDonald v. People*, 2021 CO 64. But "[t]he mere reference to an accused's incarceration is not necessarily so prejudicial as to require a new trial," and "[t]he circumstances of each case must be reviewed to determine prejudice to the defendant." *People v. Griffin*, 985 P.2d 15, 21 (Colo. App. 1998). Substantial evidence of a defendant's guilt means a jury is less likely to reach a guilty verdict based on an impermissible reference to the defendant's criminality. *People v. Everett*, 250 P.3d 649, 662 (Colo. App. 2010).

¶ 16     We need not address the performance prong of *Strickland* because Church cannot establish prejudice given the substantial evidence of his guilt. *See id.*; *Aguilar*, ¶ 9. The jury heard

testimony from all nine victims regarding the allegations against him:

- Seven of the victims testified that Church touched their vaginas (S.Y., C.C., K.K., A.D., J.N., J.M.N., and C.D.).

- S.Y. testified that he also digitally penetrated her vagina and licked her anus.

- J.M.N. testified that he also touched her chest, broke into the bathroom while she was showering, digitally penetrated her vagina, and had sexual intercourse with her.

¶ 17    In addition, nine witnesses testified that certain victims had disclosed some of Church's behaviors to them before trial:

- S.Y.'s boyfriend testified that S.Y. told him she woke up to Church "playing with her vagina."

- J.D. testified that S.Y. told her S.Y. woke up with her pants down, and Church was "doing things to her."

- C.C. testified that K.K. told her Church had "touched [K.K.] on her private"; J.M.N. told her Church had touched J.M.N.'s vagina and broken into the bathroom

while J.M.N. was showering; and S.R. told her Church had touched S.R.'s vagina.

- C.C.'s mother testified that (1) J.D. told her S.Y. had woken up to Church "touching her," and (2) C.C. told her Church had been touching C.C. for years.

- K.K.'s mother testified that K.K. told her Church had touched K.K.

- A.D.'s grandmother testified that A.D. told her Church had touched A.D.

- J.N.'s mother testified that J.N. told her Church had touched J.N. on her "crotch" or "private area."

- J.M.N.'s stepmother testified that J.M.N. told her Church would come into the bathroom when J.M.N. was showering.

¶ 18     Further, the jury viewed forensic interviews with C.C., J.M.N., K.K., A.D., S.R., J.N., and C.D. during the testimony of the investigator and forensic interviewer. Despite some discrepancies, the victims' interview statements were largely consistent with their trial testimony. And although S.R. declined to testify about the allegations against Church in detail, in her forensic interview she

8

said that he touched her "private part" with his hand and that she disclosed this to C.C.

¶ 19    Moreover, by the time the witnesses mentioned Church's custodial status, the jury already knew Church had been arrested in this case.  C.C. and J.M.N. had previously testified about Church being arrested or in jail, including in response to defense counsel's questions on cross- and recross-examination.  *See Griffin*, 985 P.2d at 21 (concluding that the jury learning the defendant was "in detention" did not warrant a mistrial in part because "the jury was already aware that defendant had at some point been arrested for the crimes for which he was on trial").

¶ 20    Furthermore, the jury acquitted Church of four out of twenty-four counts involving J.D., C.D., and J.M.N. (incest, unlawful sexual contact, sexual assault on a child, and invasion of privacy for sexual gratification).  This demonstrates that testimony regarding his incarceration did not substantially influence the verdict.  *See People v. Compos*, 2019 COA 177, ¶ 39 ("The verdict of acquittal on some counts but not others indicates that the jury was able to separate the facts and law applicable to each charge and it

did not blindly convict based on prejudicial testimony."), *aff'd in part and vacated in part*, 2021 CO 19.

¶ 21    Under these circumstances, we conclude the references to Church's arrest or incarceration were not so prejudicial that there is a reasonable probability that the jury may have acquitted him had it not heard those portions of the witnesses' answers. *See Everett*, 250 P.3d at 662-63. Therefore, counsel's failure to object to the testimony did not prejudice Church.

¶ 22    For these reasons, we discern no error in the denial of this claim without a hearing.

> D.    Failure to Protect Church's Right to a Public Trial

¶ 23    S.R. appeared at trial pursuant to the prosecution's subpoena. The prosecutor informed the trial court that S.R. did not want to testify. The court questioned S.R., who said she did not want to testify because she did not "feel comfortable talking about it." The court advised S.R. that she was required to testify under the subpoena. The court and prosecutor then engaged in the following colloquy:

> [PROSECUTOR]: Just for the record, I did ask people in the gallery to leave the courtroom at S.R.'s request. I informed them that they were

not required to do that, but I would appreciate it if they would. And, they all left voluntarily.

THE COURT: Okay.

[PROSECUTOR]: [The] courtroom is still open and unlocked.

THE COURT: Yeah, it was. Did you ask them that when S.R. is testifying that they not come back in?

[PROSECUTOR]: I did, Your Honor.

THE COURT: Okay. All right. And, did you explain to them that it is their right to stay, but they have voluntarily left?

[PROSECUTOR]: I did, Your Honor. I informed them all that . . . they did not have to leave, but that I would appreciate it that [sic] the victim had requested that there not be people in here. They all left voluntarily.

Defense counsel did not object.

¶ 24    In the Crim. P. 35(c) motion, Church asserted that trial counsel was ineffective for failing to protect his public trial right by objecting to the prosecutor's request that people in the gallery leave voluntarily. He argued he was prejudiced because the violation of a defendant's public trial right is "arguably structural error" and would have resulted in a new trial.

¶ 25    The postconviction court framed the issue as a claim that counsel was ineffective for failing "to object to an alleged courtroom closure." It denied the claim "because there was no courtroom closure that trial counsel could have objected to" since the people in the gallery left voluntarily and the courtroom remained open and unlocked.

¶ 26    On appeal, Church contends the postconviction court misconstrued the legal issue he presented. He admits that "[s]trictly speaking, the trial court judge did not 'close' the courtroom in the manner provided for in *Waller v. Georgia*, [467 U.S. 39 (1984)]." *See id.* at 42-49 (holding that the defendant's right to a public trial was violated when "the court ordered the suppression hearing closed to all persons other than witnesses, court personnel, the parties, and the lawyers"). Church also concedes that "the postconviction [court] was correct in stating that there was no courtroom clos[ur]e to which trial counsel could have objected." But he claims this is "immaterial" because the issue was not whether the trial court conducted a courtroom closure but

> (a) whether the prosecutor interfered with
> Church's constitutional right to a public trial
> by "inviting" the spectators to leave for part of

the trial, and (b) whether trial counsel was ineffective in failing to object to what the prosecutor was doing thereby alerting the court and asking the court to intercede.

He further argues that a hearing was required on this claim because what the prosecutor said to the gallery and how spectators interpreted it are factual issues not contained in the record.

¶ 27     Whether the prosecutor interfered with Church's right to a public trial was not raised in Church's Crim. P. 35(c) motion. This claim is therefore not properly before us. *See Cali*, ¶ 34 (we do not consider issues not raised before the lower court in a postconviction motion). Moreover, the issue is successive because it could have been raised on direct appeal. *See* Crim. P. 35(c)(3)(VII) (a court must deny any claims as successive that could have been raised in a prior appeal or postconviction proceeding).

¶ 28     And we reject Church's claim that counsel was ineffective for failing to object to the prosecutor's actions, thereby denying him his right to a public trial. A defendant's right to a public trial under the Sixth Amendment may be violated if "state action" denies the public or one or more individuals the reasonable opportunity to observe proceedings contemporaneously in the physical courtroom. *See*

13

*Rios v. People*, 2025 CO 46, ¶ 33.  This is known as a "total" or "partial" courtroom closure.  *Id.*  A court must apply the four-part test outlined in *Waller* to ensure that a closure does not violate the defendant's public trial right.  *Id.* at ¶ 24.  But Church concedes there was no courtroom closure here.  And he does not explain how, given that there was no closure, an objection to the prosecutor's actions would have changed the outcome of the trial.  Nor does he explain how the prosecutor's actions implicated his public trial right absent a closure.  Therefore, Church has failed to establish prejudice.  *See Weaver v. Massachusetts*, 582 U.S. 286, 300-01 (2017) ("[W]hen a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically.  Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or, as the Court has assumed for these purposes, to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair." (citation omitted)).

¶ 29    Because Church has failed to demonstrate prejudice, we need not address the performance prong of *Strickland*.  *See Aguilar*, ¶ 9.

¶ 30    For these reasons, we discern no error in the denial of this claim without a hearing.

## E.    Pressure Not to Testify

¶ 31    During the trial court's advisement under *People v. Curtis*, 681 P.2d 504 (Colo. 1984), Church acknowledged that he understood his right to testify.  He told the trial court that no one promised him anything in exchange for his decision and affirmed that no one had used "deadly force, threat, pressure, or undue influence to get [him] to come to that decision."  Church then asked the court for additional time to speak with his attorneys.  The court took a twenty-seven-minute recess to allow Church to consult with counsel.  Upon resuming the *Curtis* advisement, Church told the court he would not testify.  The court confirmed that the decision was Church's alone; no one forced, threatened, or pressured him to make that decision; and no one promised him anything in exchange for his decision.  The court also advised Church that he could change his mind at any time before the defense rested.  The court then found he had made a knowing, voluntary, and intelligent decision not to testify.

¶ 32    In his Crim. P. 35(c) motion, Church asserted that he had "limited communication with counsel concerning his right to testify" and that he "felt intense pressure from counsel" not to testify.  He argued that, "[b]ut for counsel's pressure, which overcame [his] exercise of his voluntary decision-making processes, [he] would have testified on his own behalf."

¶ 33    The postconviction court denied this claim because Church's argument was conclusory and he had received a proper *Curtis* advisement.

¶ 34    On appeal, Church argues the postconviction court erred by denying this claim without a hearing "[b]ecause the existing record is devoid of what was said during the 27-minute meeting between Church and his attorneys."  Though the record does not contain evidence of what was said during that conversation, Church was still required to allege "specific facts" in his motion to support his claim.  *See Moore v. People*, 2014 CO 8, ¶ 23.  But beyond asserting that he would have testified if he had better communication with counsel and had not been "pressured" by counsel not to testify, he did not allege any facts addressing either prong of the *Strickland* test.  For example, he never explained what additional

communication he needed or why the twenty-seven-minute recess the court granted him to consult with his attorneys was insufficient.[2] Nor did he allege how counsel pressured him not to testify. Indeed, his motion is devoid of any facts establishing that trial counsel's actions fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. Therefore, we conclude that Church did not adequately allege deficient performance in counsel's advice not to testify. *See People v. Sparks*, 914 P.2d 544, 548 (Colo. App. 1996) (concluding that advising the defendant not to testify did not constitute ineffective assistance of counsel); *People v. Osorio*, 170 P.3d 796, 799 (Colo. App. 2007) (a postconviction court may reject an ineffective assistance claim if it is bare and conclusory in nature, or lacks supporting factual allegations).

¶ 35    While admitting this claim was "spar[s]e[,] consisting of only one paragraph and comprising only 59 words," Church nonetheless

---

[2] To the extent Church attempts to provide these explanations in his reply brief, we will not consider them. *See People v. Owens*, 2024 CO 10, ¶ 90 (we do not address arguments made for the first time in a reply brief); *see also People v. Huggins*, 2019 COA 116, ¶ 17 (we will not consider allegations not raised in a postconviction motion and therefore not ruled on by the postconviction court).

contends on appeal that he should be afforded a hearing on this issue in the interest of judicial economy. He asserts that, if we affirm the denial of this claim on the ground that the allegations were insufficient, he will file another motion arguing that postconviction counsel was ineffective in drafting this claim. And he argues that requiring him to raise the issue in a second postconviction motion would be a waste of judicial resources.

¶ 36 While we recognize that we have discretion to review unpreserved constitutional issues "in rare cases" when "doing so would clearly further judicial economy," *People v. Huggins*, 2019 COA 116, ¶ 19, those issues still require supporting factual allegations, *see Delgado*, ¶ 8. But Church failed to provide these in either his Crim. P. 35(c) motion or his appellate briefs. Instead, he asserts on appeal that he would provide those allegations in "specific detail" in a future motion asserting ineffective assistance of postconviction counsel. That is not sufficient. Moreover, the problem is not that Church is raising this issue for the first time on appeal; the problem is that he failed to support his claim with specific factual allegations. And Church has provided no authority for the premise that we may reverse a postconviction court's order

18

and remand for a hearing on a claim that lacks any supporting factual allegations simply in the interests of judicial economy.

¶ 37 In any event, Church's testimony during the *Curtis* advisement contradicts his claim that counsel pressured him not to testify. Indeed, Church acknowledged he understood his right, said he had decided not to testify, and confirmed his decision was not the result of force, threats, pressure, or undue influence. And Church alleged no facts in his motion that would undermine the reliability of this acknowledgment.

¶ 38 Because Church's claim lacked supporting factual allegations and was contradicted by the record, we conclude the postconviction court did not err by denying the claim without a hearing. *See Delgado*, ¶ 8.

### III. Mittimus

¶ 39 Although not raised by the parties, we note the mittimus incorrectly reflects that Church pleaded guilty to the crimes. Instead, he was found guilty after a jury trial. Because a court may correct a clerical error on a mittimus at any time, *see* Crim. P. 36, we remand the case for the postconviction court to correct the mittimus to reflect that Church was found guilty after a jury trial.

19

## IV. Disposition

¶ 40 The order is affirmed, and the case is remanded for the postconviction court to amend the mittimus to reflect that Church was found guilty after a jury trial.

JUDGE GROVE and JUDGE SCHOCK concur.