BOUDIN and STAHL, Circuit Judges,
concurring.
Although we concur in the result and in most of what our colleague has written, our reasons differ from his in rejecting one of the principal claims of error. Among other claims raised on appeal, Lorenzo Catalán-Roman (“Catalán”) challenges the district court’s exclusion of testimony from FBI agents that he contends would have impeached Eluber Torres-Alejandro’s (“Torres”) testimony, most importantly, Torres’ testimony about the robbery and murder on March 27, 2002. Our colleague believes there was error but that it was harmless; in our view no error was committed by the district judge.
Torres testified that Gilberto Rodríguez-Cabrera (“Rodríguez”) had his hands in the air before any shots were fired, and that after Torres heard the first shot, Rodriguez fell backward, leaning against the front window of the credit union at which the robbery occurred; with his hands still *476 raised, Rodriguez then pleaded for his life before being shot by co-defendant Hernaldo Medina-Villegas (“Medina”); Rodriguez then fell to the ground wounded, after which Catalán shot him multiple times.[28] The allegedly inconsistent testimony that Catalán wanted to introduce was expected testimony from FBI agents, who interviewed Torres in the hospital, that Torres did not mention Rodriguez’ raising of hands and pleading for his life.
The district judge said that the omissions were not inconsistent with Torres’ court testimony (the court testimony added details but did not contradict the hospital statements) and, in addition, the hand raising and pleading (if they occurred) were merely “collateral” to the issues on trial and therefore not proper subjects for impeachment by extrinsic evidence. Under applicable evidence law, either ruling — if correct — would justify excluding the testimony, 1 K. Broun, McCormick on Evidence §§ 34, 36, at 152, 156 (6th ed. 2006), but Catalán disputes both rulings, contending that his constitutional right to present a fair defense was impaired by mistaken evidentiary rulings.
Although Catalán cites constitutional precedent, such as Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), he does not develop any constitutional claim independent of his assertion that the court misapplied familiar federal common-law doctrine on impeachment by inconsistency and the collateral issue rule. Even if we assumed arguendo that errors in applying those rules were themselves constitutional error — hardly like to be so in all cases — it would affect only the harmless error standard to be applied, Chapman v. California, 386 U.S. 18, 22-24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and in this ease we think there was no error by the district judge in finding the omissions not inconsistent with Torres’ testimony.
Starting with the issue of inconsistency, the ordinary rule is that earlier omissions in reciting the same story- — although not literally contradictions of later testimony — can be used to impeach a witness for inconsistency (on cross examination of the witness but not necessarily by extrinsic evidence) if the omitted information was not stated earlier “in circumstances in which that fact naturally would have been asserted.” Jenkins v. Anderson, 447 U.S. 231, 239, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); United States v. Meserve, 271 F.3d 314, 320-21 (1st Cir.2001). Ordinarily, one might think that lurid details of the kind supplied in Torres’ trial testimony might well have been supplied in the prior FBI interview; so, if they were not, this would allow, although it would not compel, an inference of inconsistency and so make the omissions relevant.
But the circumstances here were not ordinary. Torres was interviewed in the hospital, in pain and under medication; and while he was a critical witness, he was interviewed for only 15 to 20 minutes. Defense counsel asserted to the district court that one agent would testify that although Torres “was in pain,” in her opinion he was not “incapacitated or incapable of being interviewed and providing information,” but this does not mean that he was in the same condition as an ordinary witness or likely to be subject to the same degree or duration of questioning. Another agent testified (during co-defendant Medina’s penalty phase) that such an interview usu *477 ally lasts several hours and that Torres’ interview was “[ojbviously not” conducted under ideal circumstances.
In addition, the agents’ main job was to find out who were the robbers and who had done the shooting. That Torres would likely have volunteered from his hospital bed details about raised hands and pleading is far from obvious, and so the supposed inference of inconsistency is of very doubtful force. There was no proffer by Catalán, and no reason to believe, that any agent was prepared to testify that Torres had been asked about raised hands, pleading or anything else focusing on these details and had denied such happenings. Absent inconsistency, the failure to mention the details had no impeachment value.
Although some trial judges might have left the matter to the jury, the district judge is entitled to make the threshold judgment as to inconsistency as an admissibility ruling, and such a call (like most other threshold admissibility rulings), is reviewed under an abuse of discretion standard. Meserve, 271 F.3d at 321. The trial judge found that in the circumstances it would not have been natural for Torres to add the details in question; and, given that admissibility depends not on any literal inconsistency but entirely on an inference about what a witness would likely have volunteered in these circumstances, we are not prepared to find an abuse of discretion here.
Likely the district judge would not have prevented Catalán from cross-examining Torres himself as to whether and why he had previously omitted details, and Catalán’s counsel did ask Torres some questions about the March 27 interview with the FBI agents (although Torres largely testified only that he did not remember what happened in the interview). Typically, latitude is allowed in cross-examining the witness already on the stand whose reactions may be grist for the jury even without inconsistency. But before having other witnesses called, and trial time spent as well on exploring another dimension of Torres’ medical condition, the district judge was entitled to insist on inconsistency and reasonably concluded that the omissions here did not qualify.
Although it does not affect the outcome as to the omissions in this case, a further limitation exists on the right to call a separate witness to testify to inconsistent statements: the traditional rule is that extrinsic evidence of prior inconsistent statements by the witness can be offered only if the earlier statements also were relevant to the substance of the case (in jargon, were “not collateral”). United States v. Cruz-Rodriguez, 541 F.3d 19, 30 (1st Cir.2008), cert. denied, — U.S. -, 129 S.Ct. 1017, 173 L.Ed.2d 306 (2009); United States v. Beauchamp, 986 F.2d 1, 3-4 (1st Cir.1993). If so, the excursion required by extrinsic evidence is deemed worthwhile; otherwise, not.
Here, the indictment charged premeditation — although it could have relied on felony murder instead, 18 U.S.C. § 1111(a) (2006)[29] — and one might think that the supposed hand raising and pleading could bear on premeditation. But forensic evidence established that Catalán shot Rodriguez after the latter had already been *478 wounded by Medina, and Torres’ testimony, unimpeached in this regard, merely confirmed this sequence of events. Shooting an already wounded man ordinarily meets the requirements of premeditation — no particular interval is required, United States v. Brown, 518 F.2d 821, 826 (7th Cir.), cert. denied, 423 U.S. 917, 96 S.Ct. 225, 46 L.Ed.2d 146 (1975) — so as to guilt it scarcely mattered whether Rodriguez had raised his hands and pleaded.
The lurid details about hand raising and pleading were relevant — that is, not collateral — to the jury’s further choice in the second phase of the trial as to whether to recommend death or life imprisonment. Thus, if the hospital-bed omissions were deemed inconsistent, extrinsic evidence of them would have to be allowed at that second stage. It is hard to imagine that at any penalty stage a judge would have excluded testimony bearing on the circumstances of the killing even if it consisted merely of Torres’ failure to mention any details in an earlier interview.[30] In the event, the jury did not recommend the death penalty and the judge made clear his own default position was life imprisonment.
A more direct contradiction, about which Catalán also complains, concerns Torres’ testimony about the earlier robbery on November 30, 2001. At trial, Torres testified that he did not observe the November 30 robbery or the assailants; earlier, it appears, two other FBI agents had interviewed him about the robbery and he told the FBI agents (according to their notes) that he saw the robbery but “froze” and could not call for help and that he saw the assailants but could not describe them. At trial Catalán sought to have the agents testify to the inconsistency, but the trial judge ruled it a collateral issue.
If Torres did make the earlier statements, they were certainly inconsistent and so went to his credibility, but (as already noted) this permits impeachment only through cross examination and not by extrinsic evidence unless the contradiction is material to the merits of the case. Here, it is hard to see how the contradiction is of any assistance to Catalán on the merits. He was not charged with participation in the November 30 robbery, and neither version of Torres’ testimony' — the one offered at trial or the one given earlier to the agents — implicated Catalán in that robbery. Nor does Catalán offer in his brief any explanation beyond saying that the two versions contradict one another— which goes only to credibility and not to the subject matter of the case.
Catalán also claims that, beyond impeaching the specific facts in Torres’ testimony, the excluded FBI agent testimony in both instances also would have demonstrated Torres’ bias and improper motive in testifying, and so was not collateral. But this is not so and the claim is not persuasively explained; the excluded testimony did not establish what Torres’ bias and improper motive were, it merely contradicted certain details in Torres’ version of events. Nor did Catalán make this bias or motive argument in the district court: he argued only that Torres’ testimony was inconsistent and Torres therefore not credible; the new ground is not only unsupported but forfeit. Fed.R.Evid. 103(a); United States v. Olano, 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).
Accordingly, we conclude that with respect to the claimed evidentiary errors, the *479 district judge permissibly excluded the extrinsic evidence in question. Harmless error doctrine happens to produce the same result in this case, but it is important to future cases that governing evidence law be reaffirmed. Trials are full of such evidentiary rulings, often made under pressure, and those made here were within the province of the trial judge.

. There is some discrepancy between the testimony, both as we read it and in the description of it given in the briefs, as to just when the hand raising occurred; we have chosen the version that seems to be best supported, but the differences are not material to the outcome.

. Count eight of the second superseding indictment charged Catalán under 18 U.S.C. §§ 2, 924(j) with aiding and abetting the use of a firearm to cause the death of a person in the course of a crime of violence, specifically, a robbery. Section 924(j)(l) cross-references 18 U.S.C. § 1111 and provides that if the killing is "murder (as defined in section 1111),” the perpetrator shall "be punished by death or by imprisonment for any term of years or for life.” 18 U.S.C. § 924(j)(1). The indictment also explicitly cross-referenced the definition of murder in section 1111.

. There is no indication that Catalán sought to introduce the supposed omissions at the penalty phase, and the judge permitted co-defendant Medina to introduce in the penalty phase testimony from Agent Carlos Marchand on the omissions in Torres’ prior statements about March 27.